René P. Voss (CA Bar No. 255758)
Natural Resources Law
15 Alderney Road
San Anselmo, CA 94960
Phone: (415) 446-9027
Email: renepvoss@gmail.com
LEAD COUNSEL

Matt Kenna (CO Bar No. 22159)
Public Interest Environmental Law
679 E. 2nd Ave., Suite 11B
Durango, CO 81301
Phone: (970) 749-9149
Email: matt@kenna.net
LEAD COUNSEL
*Pro Hac Vice*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| SEQUOIA FORESTKEEPER and EARTH ISLAND INSTITUTE,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES FOREST SERVICE,<br><br>Defendant. | No.: 1:21−CV−01041−DAD−BAM<br><br>**DECLARATION OF ARA MARDEROSIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

1

I, Ara Marderosian, declare as follows.

1. I submit this declaration in support of the Plaintiffs' Motion for Preliminary Injunction in this case, submitted herewith. I have personal knowledge of the matters stated herein and, if called as a witness, would and could competently testify thereto.

2. I am a resident of Weldon, California and have been involved in monitoring forest management on the Sequoia National Forest for 25 years. In 2001, I founded a conservation organization, Sequoia ForestKeeper ("SFK"), and have been a member for 21 years.

3. SFK's mission is to protect and restore the ecosystems of the Southern Sierra Nevada including, but not limited to, the Giant Sequoia National Monument, Sequoia National Forest and Mountain Home State Forest through monitoring, enforcement, education, and litigation. Sequoia ForestKeeper's members, including myself, many of whom reside in local areas including Kern, Tulare, and Kings Counties, and others who visit from across the country, use the forests of the Southern Sierra Nevada for activities such as hiking, bird and animal watching, aesthetic enjoyment, quiet contemplation, fishing, photography, scientific study, and biological health. Many of its members, including myself, also have been actively involved in formulating management policies for public lands and preserving local areas including participating in the establishment and development of the Giant Sequoia National Monument.

4. I am also the Executive Director of SFK. My responsibilities at SFK include acquiring and managing the finances of the SFK, a tax exempt California public education corporation, carrying out the mission of SFK, evaluating projects proposed by the Forest Service for implementation in Sequoia National Forest and the Giant Sequoia National Monument, submitting comments and suggestions on those proposals to the agency, appealing decisions that fail to adequately consider the impacts to the environment or follow the relevant laws and regulations, and when all else fails, finding an attorney to file a complaint when our appeals or the laws are ignored.

5. In order to carry out these responsibilities, I rely on the Forest Service to provide sufficient notice of a proposed project so that I can submit comments on behalf of Sequoia ForestKeeper and its members. Furthermore, when the Forest Service issues decisions, I also

rely on the law to provide us with an opportunity to administratively appeal those decisions when we believe the decision-maker has failed to follow the law.  Occasionally, this administrative appeal process results in improving the analysis of a project, increasing the protections to resources in the project area, or the process simply halts the project altogether.

6. In the past, neither I nor our members have been given proper notice to comment on proposed actions that implement the Sequoia Land and Resources Management Plan or Giant Sequoia National Monument Plan (or forest plan).  Furthermore, when projects are categorically-excluded from analysis in an Environmental Assessment ("EA") or Environmental Impact Statement ("EIS"), neither I nor our other members have been allowed to administratively appeal those projects.  That is also the case for the project that is the subject of this litigation.

7. Neither I nor our members were notified of the Plateau Road HT Project until after the Forest Service provided us with their final decision in the form of a "NEPA Checklist."

8. Sequoia ForestKeeper and its members, including myself, have and are being harmed by this failure to provide notice and comment on the project, which has the effect of causing actual environmental harms.

9. SFK and its members, including myself, will be harmed by the Forest Service's implementation of the roadside and recreation site logging projects in the Sequoia National Forest and will be harmed by the effects from those actions on climate, various wildlife species, which we monitor and are trying to protect.  These species include resident Pacific fishers, California spotted owls, northern goshawks, and mountain yellow-legged frogs (MYLF).

10. Moreover, SFK and its members, including me, will be harmed by the loss of old-growth forest and our ability to observe wildlife, including California spotted owls, northern goshawks, Pacific fishers, and MYLF from the various logging and vegetation management activities after the fire.

11. I have reviewed the limited set of relevant documents associated with the case.

12. On 19 February 2021, in a request to the Acting Secretary of the U.S. Dept. of Agriculture, we described this project and asked the administration to withdraw it, stating: "The Sequoia National Forest's Plateau Roads Hazard Tree project, finalized June 6, 2020, used a CE

to authorize 2,193 acres of commercial logging of large trees up to 200 feet from 45 miles of road, in habitat for the endangered Pacific fisher. Use of the CE precluded public input and consideration of alternatives, including the alternative of noncommercial felling of legitimate hazard trees. The Decision Memo should be withdrawn. If the agency wants to move forward, it should start over with an EA and appropriate public input." *See* http://www.sequoiaforestkeeper.org/pdfs/signon_letters/20210219_Letter_re_EO_13990.pdf.

13. I have been visiting the Kern Plateau area where the project is located dozens of times over the last 25 years for recreation and to monitor resources and Forest Service activities. Those visits always start with the Sherman Pass Road, and I have been on each of the side roads in the project area several times, including 22S21, 22S26, the Bonita Meadows Road, and many other side roads that access more remote areas on the Kern Plateaus.

14. Most recently, I visited the Kern Plateau with SFK's Programs Director, Alison Sheehey, on 20 May 2021 to survey for trees marked for logging in the Plateau Roadside Hazard Tree Project.

15. During our visit, I was able to identify many living trees, marked for removal, including white fir, red fir, Jeffrey pine, and lodgepole pine.

16. I saw trees that I thought could not possibly fall on the road, including true hazards, because they were too far from the road.

17. While hiking through and monitoring the project area, I have observed mature stands of old growth trees and pockets of large down woody material both of which are indicators of suitable Pacific fisher habitat, as well as habitat for the California spotted owl and northern goshawk. Furthermore, I have observed the streams, meadows, and seeps in the area, which provide habitat for the endangered mountain yellow-legged frog (MYLF). All of these project areas provide habitat for a large range of native species, which I and our members try to observe, and the logging activities proposed in the project will diminish our ability to make these observations.

18. Logging projects have historically caused a disruption of my recreational activities through the logged areas because the forest is no longer reflective of the natural forest

characteristics.  The Plateau Roads Project will harm my recreational interests in observing intact forests and associated wildlife.  The Forest Service has allowed the logging activities to start in June, which will harm my future ability to view the wildlife species that I am trying to protect in the Sequoia National Forest.  I enjoy recreating in forests that have not been logged, and logging will ruin my enjoyment of the area.

19. I plan to visit project area again in July and again in August.

20. I believe that, if the Forest Service were to follow the law, the agency would prepare an EA or EIS as required by NEPA, and analyze whether there are significant effects on the climate and carbon storage, on the SSN Fisher and other sensitive wildlife species, and on my ability to view and study these wildlife species.  Moreover, if the Forest Service were to properly analyze the environmental effects on climate, carbon storage, and wildlife species, they would consider alternatives, such as leaving most of trees proposed for logging and not felling or removing them, and closing roads that are not needed for access in order to protect habitat.  Moreover, they would revise the projects so they will result in greater mitigation of adverse effects to wildlife while still providing for carbon storage and public safety.

21. I believe that a favorable court decision finding that the Forest Service failed to comply with the National Environmental Policy Act, and issuing an injunction against the agencies would redress the injuries I have described.

Attorney Assistance and SFK's Inability to Post More than a Nominal Bond

22. After asking for help from local attorneys, we have discovered that there are no attorneys in our area, including in the Fresno and Bakersfield legal communities, with the necessary expertise to prosecute National Environmental Policy Act, National Forest Management Act, and Administrative Procedure Act cases focused on national forest management, and so we must rely on attorneys in the San Francisco Bay Area or attorneys in other states, with the necessary specialized legal skills and experience to effectively bring SFK's cases against the U.S. Forest Service.

23. As Executive Director of SFK, I can report on our ability to post a bond for a Preliminary Injunction or Temporary Restraining Order.  At this time SFK has $15,000 for 2021

Case No.: 1:21−CV−01041−DAD−BAM – DECLARATION OF ARA MARDEROSIAN         5

for the entire road and recreation site legal challenge, which has already been allocated to pay our attorneys. We have nominal funds for litigation expenses, and all of those have also been allocated. The rest of our funds are restricted to purposes unrelated to this litigation. Given such restricted donor intent, SFK cannot legally use these funds for expenses, fees, or bonds related to this litigation. Such unauthorized use of restricted funds would leave SFK open to potential liability with respect to our donors, and would almost certainly result in the loss of funding. Because our organization has a relatively small amount of unrestricted money, any lapse in funding, or any contingency (such as imposition of even a nominal bond in this case) would be devastating to our continued viability. SFK would be deterred from continuing its work to protect the Sequoia National Forest and Giant Sequoia National Monument or work in public interest.

24. Unlike for-profit businesses, which can with some degree of accuracy and confidence estimate the following year's revenue, small non-profit groups like SFK cannot do this. This is because the charitable foundations, which are the main source of our grants, frequently change funding direction and key staff contacts or competition for grant funding becomes more severe. We spend what we receive, and what we receive is almost always allocated to a specific purpose. There is no guarantee from year to year whether SFK will continue to be funded by past grantors, and this is true for our litigation activities as well.

25. In fact, we simply do not have money available to pay more than a nominal bond (up to $100) in this case.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and recollection.

Executed on June 28, 2021 in Weldon, California.

*Ara Marderosian*
Ara Marderosian