René P. Voss (CA Bar No. 255758)
Natural Resources Law
15 Alderney Road
San Anselmo, CA  94960
Phone:  (415) 446-9027
Email:  renepvoss@gmail.com
LEAD COUNSEL

Matt Kenna (CO Bar No. 22159)
Public Interest Environmental Law
679 E. 2nd Ave., Suite 11B
Durango, CO 81301
Phone: (970) 749-9149
Email: matt@kenna.net
*Pro Hac Vice*

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| SEQUOIA FORESTKEEPER and EARTH ISLAND INSTITUTE,<br><br>Plaintiffs,<br>v.<br><br>UNITED STATES FOREST SERVICE,<br><br>Defendant. | No.: 1:21−CV−01041−DAD−BAM<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date: July 21, 2021<br>Time: 1:30 p.m.<br>Judge: Hon. Dale A. Drozd |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

I.  Plaintiffs are Likely to Succeed on the Merits..................................................................2

II. Plaintiffs Are Suffering Continuing Irreparable Harm .....................................................5

   A. Plaintiffs Filed their Case and Motions for Injunctive Relief at the Earliest Possible Time..........................................................................................................5

   B. Plaintiffs' Harm is Irreparable ................................................................................8

III. The Balance of Equities and Public Interest Tip Sharply in Plaintiffs' Favor..................9

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

CASES:

*Earth Island v. Elliott*, 318 F. Supp. 3d 1155 (E.D. Cal. 2018)......................................................5

*Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985 (9th Cir. 2020) ("*EPIC*") ...................... 1-4, 9-10

*Los Padres Forestwatch v. U.S. Forest Service*, No. CV-08-845-GW (MANx)
   (C.D. Cal. July 3, 2008) (3rd Voss Dec. Exhibit F) ............................................................4-5

*Sierra Club v. Bosworth*, 510 F.3d 1016 (9th Cir. 2007)..................................................................4

*Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100 (E.D. Cal. 2013)...................................8


STATUTES:

National Environmental Policy Act

42 U.S.C. § 4332.......................................................................................................................*passim*


FEDERAL REGULATIONS:

36 C.F.R. section 218........................................................................................................................ 9

36 C.F.R. § 218.24 ......................................................................................................................... 10

36 C.F.R. § 218.26 ......................................................................................................................... 10

36 C.F.R. § 220.6(d) ........................................................................................................................ 6

36 C.F.R. § 220.6(d)(4).............................................................................................................3-5, 10

36 C.F.R. § 220.6(e)......................................................................................................................... 6

36 C.F.R. § 220.6(e)(10) .................................................................................................................. 3

36 C.F.R. § 220.6(e)(13)................................................................................................................3-5

73 Fed. Reg. 43,084 (July 24, 2008) ............................................................................................... 6

# INTRODUCTION

The Court should issue a temporary restraining order to preserve the *status quo* and protect Plaintiffs from ongoing harm from the removal of trees in the challenged Plateau Roads Project, which the Forest Service has allowed in violation of Ninth Circuit precedent and the National Environmental Policy Act (NEPA).

Throughout the Forest Service's opposition brief, the agency is conflating the issue of tree removal with that of tree felling with respect to Plaintiffs' harm, the merits, the balance of equities, and the public's interest.  Plaintiffs, as they did *Envtl. Prot. Info. Ctr. v. Carlson*, 968 F.3d 985 (9th Cir. 2020) ("*EPIC*"), have suggested a reasonable and responsible equitable remedy that would allow the Forest Service and its contractors to mitigate hazards while the Court considers this case on the merits.  As the Ninth Circuit stated in *EPIC* when it entered its preliminary injunction:

> To the extent the Forest Service authorizes salvage logging that constitutes more than repair and maintenance, EPIC seeks only the preparation of an EIS or an EA. The Forest Service has not shown that fulfilling its obligation to prepare an EIS or an EA is inconsistent with the goal of public safety…. We conclude that EPIC will succeed on the merits of its claim; that it will suffer irreparable, though limited, harm; and that it has demonstrated that the balance of equities and the public interest weigh in its favor.

*Id.* at 992.  Although the Forest Service attempts to distinguish the facts in this case from *EPIC*, both cases involve identical circumstances, in which the Forest Service has sold timber and is relying on a timber sale to implement a project that should have been analyzed with at least an Environmental Assessment under NEPA.

Plaintiffs have not delayed filing this case and will explain below why they could not have brought this case earlier than it did, due to misinformation by the Forest Service, COVID restrictions, forest closures due to fire risk and an actual fire, and for judicial efficiency.

Because logging is ongoing, Plaintiffs ask the Court to issue a temporary restraining order to preserve the *status quo*, except to allow some limited tree felling (without removing them) to avert hazards from trees that are reasonably likely to fall until the Court can rule on Plaintiffs' motion for preliminary injunction and/or final resolution of the case.

I.      **Plaintiffs are Likely to Succeed on the Merits**

    A.  **The Project Violates *EPIC v. Carlson***

The Forest Service argues that this case is not like the *EPIC* case, but for all relevant purposes it is exactly like *EPIC*. The agency would have the Court believe that there the panel did not consider that trees 1.5 times their height could hit the road because of " 'the physics of a falling tree and the structural properties of the wood in typical hazard trees.' " FS Brf. at 17, quoting the Declaration of Brian Block, Exhibit 5 at 1-2 (10/7/20 "Hazard Trees Guidelines Addendum"). That Addendum goes so far as to say that "[the *EPIC*] court concluded a tree located further than its height from a road could not be a hazard to the road, since the tree could fall no further than its height. This conclusion was based on a misunderstanding of the various factors that determine the potential failure zone of a hazard tree." *Id*. at 1 (ECF 16-2 at 64).

But rather than a "misunderstanding," the Court thoroughly considered this same explanation there and rejected it in finding that such an expansive definition of a hazard tree did not permit exempting the project under the road maintenance CE. Much of the oral argument in the case was taken up with questions about whether a tree that is one and a half tree heights could realistically hit the road. *See* https://www.ca9.uscourts.gov/media/video/?20200527/19-17479/ at 13:20-20:48 (Judge Fletcher opining that the risk was "minimal to non-existent" and noting that the "Forest Service does disagree" with his opinion but was unable to show why it he might be wrong); at 31:07-35:27 (intervenor counsel noting that it is "to account for things like slope" but Judge Fletcher pointing out that that provision applied regardless of slope and not just to uphill trees).

And in the Court's decision, it found:

> If a 100-foot tree located 150 feet from the road were to fall directly toward the road at a 90 degree angle, the tip of the tree would come to the ground 50 feet from the road. If a 111-foot tree located 165 feet from the road were to fall in the same manner, its tip would come to the ground 54 feet from the road. If the trees were to fall at any other angle, their tips would come to the ground at greater distances from the centerline.

968 F.3d at 988. "While all of the trees within the scope of the Project may be hazardous in some sense, many of them pose no imminent hazard. As described above, a number of the trees

1  will not come close to the road even if they fall directly toward it." *Id*. at 990.  And the Court

2  ultimately found that "[a] CE of such limited scope [CE (d)(4)] cannot reasonably be interpreted

3  to authorize a Project such as the one before us, which allows commercial logging of large trees

4  up to 200 feet away from either side of hundreds of miles of Forest Service roads." *Id*.[1]

5  So, far from a "misunderstanding of the various factors that determine the potential

6  failure zone of a hazard tree," the Court fully understood the various factors but simply rejected

7  the agency's guidelines allowing it to fell trees one and a half times their height under the road

8  maintenance CE.  The agency could of course cut such trees, but it would have to prepare an EA

9  first, not rely on the road maintenance CE.  Accordingly, the Forest Service's update to the

10 guidance after *EPIC* was decided "does not change any agency guidance [but] simply provides a

11 more detailed explanation for existing guidance and practice" (ECF 16-2 in the present case at

12 PDF 64 of 73), and must be rejected as a rationale for why this project supposedly complies with

13 *EPIC*.

14 The Forest Service argues that green trees can be hazards.  *See* Brf. at 11-15.  However,

15 that is irrelevant to the merits—*EPIC* did not hold that removing trees at this scale under CE

16 (d)(4) is only illegal if dead and dying trees are at issue, and that holding applies equally to green

17 trees.  The reason that Plaintiffs primarily raised the green tree issue is the balancing of equities,

18 to point out that there is likely not the same urgency to cut green trees.  Pl. Brf. at 17.

19 For these reasons, the Plateau Roads project directly violates *EPIC v. Carlson.*

20 **B.  CE (e)(13) Does Not Apply to the Project, but Neither Does CE (d)(4)**

21 It is not that the Forest Service should have chosen CE (e)(13) for this project—it could

22 not because the project vastly exceeds 250 acres.  It is simply that a project like Plateau Roads

23 also cannot be exempted under CE (d)(4), as its scale is vastly too large for that CE, as shown by

---

[1] While this case involves "only" 45 miles of road instead of hundreds as in *EPIC*, there was no suggestion by the Court that that would be a distinction with a difference.  Rather, it posited that perhaps a project which removed "dead and dying trees up to only 20 feet back from 100 miles of Forest Service roads" might be permissible under CE (d)(4), indicating it is the distance from the road that is the most important consideration.  *See* 968 F.3d at 991.

1  the existence of CE (e)(13) and the agency's other CE rules where the Forest Service itself
2  limited the size of commercial timber sale and other logging projects of this size.
3      The agency states that "most" of the Project will not be a commercial timber sale, but the
4  logging operator's sale of trees to a timber mill is still a significant part of the operation, and
5  over 250 acres, and even though the remainder will be implemented through "grant funds," the
6  trees will still be sold and removed for purposes other than milling, so this is still a commercial
7  tree removal project having the same impact as timber sold to a timber mill. *See* FS Brf. at 20,
8  citing Watson Decl. (discussing how the trees will still be sold and removed).[2]  As the agency
9  and the Ninth Circuit have shown, the Forest Service has never approved tree removal projects
10 via CE of unlimited acreage.  Even projects involving "mechanical methods" for cutting trees for
11 "hazardous fuels reduction" were limited to 1,000 acres by the agency, and even that was found
12 to be too large to exempted under CE by the Ninth Circuit.  *Sierra Club v. Bosworth*, 510 F.3d
13 1016, 1026-1030 (9th Cir. 2007) (setting aside 36 C.F.R. § 220.6(e)(10), which remains
14 vacated).
15     While *EPIC* stated that "[w]e have no doubt that felling a dangerous dead or dying tree
16 right next to the road comes within the scope of the 'repair and maintenance' CE," the example
17 of the extent of what might be allowed was "only 20 feet back from 100 miles of Forest Service
18 roads." *EPIC*, 668 F.3d at 990-991.  And while the Forest Service cites district court cases
19 issued before *EPIC* that allowed broad use of CE (d)(4) (FS Brf. at 19-20), it fails to cite a case
20 which found that CE (d)(4) could *not* be used for roadside logging projects over 250 acres:

> The ultimate problem with Defendants' position herein is that the
> Forest Service has already considered the issue of when the
> salvage of dead and/or dying tree and the harvesting of fire-
> damaged trees can categorically be found not to have a significant
> effect on the forest environment. It did so in the process of
> promulgating CE [(e)(13)]. It found that such activities would not
> have a significant effect by themselves so long as the scope of that
> conduct: 1) did not exceed 250 acres and 2) did not involve more
> than ½ mile of temporary road construction.

---

[2] Notably, "the Forest Service entered into an agreement with Great Basin Institute (GBI) to remove dead hazard trees. GBI hired a logging contractor, Jess Witten, to cut and remove the dead hazard trees in the project area. If Mr. Witten is not allowed to remove the dead hazard trees, he will not get paid."  Witten is the same operator who holds the timber sale contract.

Case No.: 1:21−CV−01041−DAD−BAM – REPLY IN SUPPORT
OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER                    4

*Los Padres Forestwatch v. U.S. Forest Service*, No. CV-08-845-GW (MANx), (C.D. Cal. July 3, 2008) (3rd Voss Dec., Exh. F).

And regarding *Earth Island v. Elliott*, 318 F. Supp. 3d 1155, 1162 (E.D. Cal. 2018), cited by the agency, although the appeal of that decision was dismissed as moot, at argument two of the judges on that panel expressed skepticism that the agency could exempt such projects under CE (d)(4).  *See* Oral Argument in 9th Cir. # 18-16354,[3] at 16:54, comments of Judge Ikuta ("[CE (d)(4)] doesn't obviously apply to this situation, [(e)(13)] seems much closer, … they make a very strong argument that [(d)(4)] doesn't really fit; if we get to the merits, why do we defer to the FS; none of the examples [in (d)(4)] actually fit … they are much more minor, much less invasive."); *see also id*. at 24:11 (J. Ikuta); *id*. at 27:40 (comments of Judge N.R. Smith expressing similar skepticism).

In sum, the tree cutting at issue in this case is much more than "grading a road and clearing the roadside of brush" or "pruning vegetation," the examples given by CE (d)(4), and so it cannot apply.

## II.     Plaintiffs Are Suffering Continuing Irreparable Harm

### A.     Plaintiffs Filed their Case and Motions for Injunctive Relief at the Earliest Possible Time

The Forest Service suggests that Plaintiffs could have brought their case and motions for injunctive relief much sooner, which argues against their assertions of irreparable harm. However, that is not the case.  Given the many factors that lead to Plaintiffs filing date of July 1, including Forest Service delays in informing Plaintiffs about the project decision, forest closures due to fire risk, COVID, and the SQF Complex/Castle Fire, as well as misinformation by the Forest Service about project implementation and the planned decision for the SQF Complex/Castle Fire Hazard Tree project, there was no undue delay.

As stated in Plaintiffs' opening brief, there was no public notice, publication in the SOPA, scoping, or any other public involvement, specifically, with regard to an action titled Plateau Roads Hazard Tree Project.  Instead, the Forest Service released a general scoping notice

---

[3] https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000016052

for the entire Sequoia National Forest, which listed a number of roads by number in the Kern River Ranger District. *See* ECF No. 16-1, Exhibit 1. Plaintiff Sequoia ForestKeeper did submit general comments in response on February 14, 2020, mentioning a "Plateau Roadside Hazard Tree Project" (*id.* at Exhibit 2), but the comments themselves (not attached to the Johnston exhibit) show that Sequoia ForestKeeper thought that the Plateau Roads project was an entirely different and additional project. *See* Second Declaration of René Voss, Exhibit E at 2 ("But in addition to these proposals, we have learned that the Forest Service is planning another large roadside-hazard tree project called the 'Plateau Roads Hazard Tree Project.' "). The comments "urge [the Forest Service] to provide public with notice and open up the individual hazard tree projects to public comment so we can provide detailed information about any site-specific concerns. We also urge [the Forest Service] to prepare at least a programmatic Environmental Assessment for the forest-wide hazard tree program for 2020-2021, including the Plateau Project…." *Id.*

Instead, there was no further opportunity to comment, the Forest Service issued its decision for the Plateau Roads project on June 2, 2020 (without public notice), but Plaintiffs only first learned about the decision in response to a Freedom of Information Act request dated October 29, 2020. ECF No. 16-1, Exhibit 6 at 1 & 3 (table).

That the Forest Service relies on a minor "(d)" CE category both shows why it does not apply here, and helps explains why Plaintiffs had to file when they did. The Forest Service has promulgated numerous categorical exclusion rules, both for minor actions which do not require a project or case file and "Decision Memo" to satisfy NEPA (see 36 C.F.R. § 220.6(d), the "(d)" categories), and others for more substantial actions that do require a project or case file and a Decision Memo. *See* 36 C.F.R. § 220.6(e), the "(e)" categories. As the Forest Service has explained, "[w]hile some Forest Service categorical exclusions of *limited scope* do not require a decision memo or project record [the "(d)" categories], a majority of the Forest Service's categories [the "(e)" categories] do require preparation of a decision memo and a supporting record." 73 Fed. Reg. 43,084, 43091 (July 24, 2008) (emphasis added). Because the road maintenance CE is a "(d)" category, there was no project or case file, or Decision Memo, that

would have helped alert Plaintiffs to when this project was finalized.

Although Plaintiffs have known about the Plateau Roads Hazard Tree Project since October 29, 2020, and were informed in January 2021 that a timber sale had been awarded, Plaintiffs had good cause to delay filing the current action. As Sequoia ForestKeeper's Alison Sheehey explains, "[o]ur delay in filing the case was for multiple pertinent reasons, which included COVID closures, extreme fire risk statewide, forestwide closures, fire closures, and winter road conditions closures." 2nd Sheehey Dec., ¶¶ 6-10.

Moreover, misinformation on May 18, 2021, by the Forest Service about the status of the Plateau Roads project suggested that by then the project was "more than halfway completed." 3rd Voss Dec. ¶ 6 & Exhibit A, ¶ 20 (Kinports Declaration); *see* 2nd Sheehey Dec. ¶ 11.

Because Plaintiffs were told that over half the Plateau Roads project had already been implemented, before Sequoia ForestKeeper could even visit the project area, they had reason not to bring this case at that time because it was likely that most of the logging could be completed before Plaintiffs could get any relief. 3rd Voss Dec. ¶ 7. Not until June 7, 2021, did counsel for the Forest Service inform Plaintiffs that the status with regard to the Plateau Roads project "in paragraph 20 of the Kinports declaration was an error." *Id*. ¶ 13 & Exhibit A at 1. The next day, counsel informed Plaintiffs that "the estimated start date for operations on the Plateau project … will be on or around June 14." *Id*. ¶ 15. Counsel's June 7 message also stated that "with respect to the SQF Complex/Castle Fire Roadside Hazard Project, the Forest Service estimates that a decision will be reached around July 1, 2021." *Id.* ¶ 14.

Because of limited resources and for judicial efficiency, Plaintiffs planned to file a single action to challenge both the Plateau Roads and SQF Complex/Castle Fire hazard tree projects, which would include the same NEPA claim arising from the Forest Service's use of CE (d)(4) for road and recreation maintenance to approve large timber sales described as hazard tree projects. *Id.* ¶ 9; *see* 2nd Sheehey Dec. ¶ 12 (stating that Plaintiffs planned to file a combined case by July 1). Just as in the Plateau Roads project, in the SQF Complex/Castle Fire Hazard Tree Project "felled trees could be … removed for wood products such as timber or biomass, personal or commercial firewood, or other similar means of processing and/or removal." Voss

Dec. ¶ 10 & Exhibit C at 1-2 (scoping notice for that project).  The Forest Service, similarly, planned to use a CE.  *Id.* ¶ 11.

But on June 17, 2021, Plaintiffs learned that the Forest Service was delaying its decision for the SQF Complex/Castle Fire project until the late July.  *Id.* ¶ 16.  So rather than wait until late July when there was a risk that a substantial amount of logging could be completed in the Plateau Roads project, Plaintiffs decided to file the case on July 1, as planned.  *Id.* ¶ 17.  Plaintiffs' counsel immediately attempted to confer with Defendants' counsel, and after learning on July 5 that logging had begun, Plaintiffs' counsel again reached out to opposing counsel but also filed their preliminary injunction motion the next day.  *Id.* ¶ 18-20.

In Plaintiffs' attempts to avoid the need to ask the Court for a TRO, on July 7, Plaintiffs counsel held a telephonic conference with Defendants' counsel seeking some interim relief for the trees of most concern to Plaintiffs.  2nd Voss Dec. ¶ 6.  While the Forest Service initially agreed not to cut the live green trees as negotiations continued to formalize an agreement for interim relief, on July 15, 2021, the Forest Service abruptly declared that the parties had reached an impasse, and informed Plaintiffs that it would no longer agree to suspend logging of any trees past July 15, 2021.  Plaintiffs filed their TRO motion the same day.

For these reasons, Plaintiffs did not unduly delay filing this case and its request for relief.

**B.     Plaintiffs' Harm is Irreparable**

The Forest Service argues that Plaintiffs cannot rely on a " 'procedural injury alone . . ..' " FS Brf. at 9, citing *Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1110-11 (E.D. Cal. 2013).  However, there the plaintiffs had not proven their alleged concrete harms for the "region-wide injunction they request[ed]," and had additionally argued that they suffered procedural injury from the NEPA violations alone.  *Id*.  Here, Plaintiffs request an injunction only of a specific project, and while they did spend one short paragraph at the end of their irreparable harm section explaining how their NEPA rights have been denied, Plaintiffs spent the vast majority of their effort explaining how their concrete "use and enjoyment" of the area covered by the Plateau Roads Project will be irreparably harmed in the absence of an injunction. Pl. Brf at 13-14.  The Forest Service does not, and cannot, argue with the fact that these are

irreparable harms found by the courts to warrant an injunction.  *See id.*

The agency argues that because Plaintiffs have crafted their injunction request to allow the felling of trees to avoid any immediate safety risks, that means tree cutting does not irreparably harm their interests.  However, as stated by Plaintiff member Alison Sheehey: "Our requested injunctive relief, which would allow some limited felling of trees that pose immediate hazards while proper NEPA review is completed, was simply an attempt to make our request reasonable.  Cutting such trees does in fact cause me irreparable harm, but being aware that harms are balanced I am willing to suffer such harm for both the sake of public safety and so that our injunction request, which would preserve most of the trees, is not rejected out of hand."  2nd Sheehey Dec. ¶ 14.

Moreover, the agency argues that Plaintiffs will not be harmed because the project "primarily targets dead or dying trees and unstable live trees, [so] 'an injunction would only prevent the Forest Service from doing what will occur through natural forces in the next few years.' "  FS Brf. at 8.  But that is not what would happen here, in which the Forest Service plans to both fell and *remove* the hazard trees from the forest, whereas natural forces would allow the fallen trees to provide essential wildlife habitat, help build soils, soak up moisture, and otherwise support the forest's complex ecosystem.

**III.     The Balance of Equities and Public Interest Tip Sharply in Plaintiffs' Favor**

The Forest Service argues that the equities and public interest supports allowing the agency to go forward with a project that runs afoul of very recent precedent by the Ninth Circuit.  But just as in the *EPIC* decision, "[t]he Forest Service has not shown that fulfilling its obligation to prepare an EIS or an EA is inconsistent with the goal of public safety."  *EPIC*, 968 F.3d at 992.  This is even more true here where the agency has already been told by the Ninth Circuit that it must at least prepare an EA for this scale of roadside logging project.

The Forest Service could easily have taken, and still could take a different course before the end of the operating season, by preparing an EA, which it had time to do during the same time it took to prepare the CE.  This administrative process for EAs is outlined in 36 C.F.R. section 218, which could have been completed in 120 days or even less.  This includes a 30-day

public comment period (36 C.F.R. § 218.24), and a 45-day objection period once a final EA and draft Decision Notice has issued. *See* 36 C.F.R. § 218.26 (providing for 45-day objection period). The agency then has up to 45 days to issue it objection decision to resolve any issues raised in the objection (*id*.), but there is nothing to prohibit it from issuing this decision as soon as it wants. If ordered to do so, this timeline provides the Forest Service with a reasonable schedule to prepare and review an EA, which would preserve Plaintiffs' and the public's interests. And the public interest does not support allowing the Forest Service to ignore the *EPIC* decision, where the agency was put on notice last summer that approving a roadside logging project of this scale via CE (d)(4) was not permissible.

The Plaintiffs have crafted their request to allow the felling of trees immediately needed for public safety. This requested injunction balances the equities and serves the public interest far more than permitting the agency to carry out a blatant violation of NEPA.[4]

## CONCLUSION

To protect Plaintiffs from irreparable harm, Plaintiffs ask the Court to enjoin the Plateau Roads Project.

Respectfully submitted this July 19, 2021.

> */s/ René Voss*
> René Voss
> Matt Kenna, *Pro Hac Vice*
>
> *Attorneys for Plaintiffs*

---

[4] Regarding the need for a bond, Plaintiffs have already explained that they could not afford more than a nominal bond, and that the courts are empowered to waive the requirement for a bond or to only require a nominal one. Pl. Brf. at 18; *see* FS Brf. at 25 n. 5. Without addressing it, no bond was required by the Ninth Circuit in the *EPIC* case. *See* 968 F.3d at 992.