UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEQUOIA FORESTKEEPER, et al.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FOREST SERVICE,<br><br>Defendant. | No. 1:21-cv-01041-DAD-BAM<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION<br><br>(Doc. No. 7) |

This matter is before the court on a motion for a preliminary injunction brought by plaintiffs Sequoia ForestKeeper ("SFK") and Earth Island Institute ("Earth Island") (collectively, "plaintiffs") against defendant United States Forest Service ("USFS" or "agency"). A hearing on this motion was originally scheduled for August 3, 2021; however, on July 30, 2021, following entry of the court's order granting plaintiffs' motion for a temporary restraining order (Doc. No. 7) and in consultation with the parties, the court took this matter under submission to be decided on the papers without holding a hearing. (Doc. Nos. 19, 21, 22.) The court now adopts the reasoning set forth in its July 23, 2021 order granting plaintiffs' motion for a temporary restraining order and will grant plaintiffs' motion for a preliminary injunction.

**BACKGROUND**

Plaintiffs allege as follows. The Plateau Roads Hazard Tree Project (also at times referred to as the Plateau Roads Timber Sale) (hereinafter "Plateau Roads Project" or the "Project") is a

hazard tree removal project and commercial timber sale on the Central Kern Plateau of the Sequoia National Forest that has been authorized by USFS. (Doc. No. 1 at ¶¶ 1, 19.) The Project authorizes hazard tree mitigation along approximately 45 miles of forest roads over 2,193 acres and up to 200 feet from the roads, and the commercial timber sale authorizes the logging of 2.1 million board feet of timber from 1,498 acres, a subset of the Project. (*Id*. at ¶¶ 2, 20, 26; Doc. Nos. 7-1 at 14; 8-3 at 2.)

The Plateau Roads Project was authorized pursuant to a categorical exclusion defined in 36 C.F.R. § 220.6(d)(4) (hereinafter "CE 4").[1] (Doc. No. 1 at ¶ 23.) On June 2, 2020, the Deputy District Ranger for the Kern River Ranger District USFS issued a "NEPA Compliance Checklist" for the Project,[2] which outlines the project's purpose as follows:

> The purpose of the Plateau Roads HT project is to fell and remove hazard trees that have potential to fail and cause injury to either people or property. The project may fell and remove dead, dying or live trees of any size which are hazards to roads, campgrounds, power lines or other infrastructure, as defined by the *Hazard Tree Guidelines for Forest Service Facilities and Roads in the Pacific Southwest Region* (USFS 2012). Trees determined to pose either a high or moderate hazard risk may be cut on about 2,193 acres and may be sold as timber, fuelwood, or commercial biomass, chips or other forest products.

---

[1] CE 4 applies only to the following activities:

> (4) Repair and maintenance of roads, trails, and landline boundaries. Examples include but are not limited to:
>
> (i) Authorizing a user to grade, resurface, and clean the culverts of an established NFS road;
>
> (ii) Grading a road and clearing the roadside of brush without the use of herbicides;
>
> (iii) Resurfacing a road to its original condition;
>
> (iv) Pruning vegetation and cleaning culverts along a trail and grooming the surface of the trail; and
>
> (v) Surveying, painting, and posting landline boundaries.

§ 220.6(d)(4).

[2] USFS utilizes two types of CEs: those which require "a case file and decision memo" and those which do not. 36 C.F.R. § 220.6(e). CE 4 is the latter type, and thus no documentation was required. (Doc. No. 16 at 9.)

(*Id.* at ¶¶ 20–21.)  Plaintiffs allege that "[a]ccording to information provided by the Forest Service, while the hazard tree guidelines were followed, hazard tree evaluation forms that document each hazard tree and its status or rating were not prepared due to the large scale of the project."  (*Id.*)[3]

On July 1, 2021, plaintiffs filed their complaint in this action seeking declaratory and injunctive relief and challenging the Plateau Roads Project's authorization pursuant to CE 4, arguing that USFS violated NEPA by relying upon this categorical exclusion, which covers the repair and maintenance of roads, to authorize a large-scale tree removal and timber sale without conducting the necessary environmental analysis.  (*Id.* at ¶¶ 8, 56–60.)  Plaintiffs filed the pending motion for a preliminary injunction on July 6, 2021.  (Doc. No. 7.)  On July 15, 2021, plaintiffs filed a motion for a temporary restraining order, in order to preserve the *status quo* because defendants had already begun the logging that plaintiffs sought to enjoin.  (Doc. Nos. 12; 7 at 2.)  On July 19, 2021, the government filed a combined opposition to both plaintiffs' then-pending motion for a temporary restraining order and to plaintiffs' motion for a preliminary injunction.  (Doc. No. 16.)

On July 23, 2021, this court issued an order granting plaintiffs' motion for temporary restraining order.  (Doc. No. 19.)  Therein, the court also directed the parties to file a joint response as to their positions regarding whether any further evidence or briefing was needed or whether the court may adopt its July 23, 2021 order in ruling on the pending motion for preliminary injunction.  (*Id.* at 17.)  On July 30, 2021, the parties filed a joint response.  (Doc. No. 21.)  Defendant requested additional, but modest, briefing.  Plaintiffs disagreed that additional briefing was necessary, but stated that they were nonetheless amenable to defendant's proposed briefing schedule if the court found further briefing to be appropriate.  Good cause appearing, the court granted defendant's request for leave to file a short memorandum of no more than five pages in length.  (Doc. No. 22.)  Defendant filed its supplemental memorandum on August 6,

---

[3] Additional pertinent factual background may be found in the court's July 23, 2021 order granting plaintiffs' motion for a temporary restraining order (Doc. No. 19), and will not be repeated here.

3

2021, and plaintiffs filed their response thereto on August 13, 2021.  (Doc. Nos. 23, 24.)

**LEGAL STANDARDS**

**A.     Motion for Preliminary Injunction**

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'") (quoting *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).  The Ninth Circuit has also held that an "injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *All. for Wild Rockies*, 632 F.3d at 1134–35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (*en banc*), *overruled on other grounds by Winter*, 555 U.S. 7.[4] The party seeking the injunction bears the burden of proof as to each of these elements.  *See Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

/////

/////

---

[4] The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test."  *All. for the Wild Rockies*, 632 F.3d at 1134.  "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id*. at 1135.

**B.    Administrative Procedure Act**

Compliance with NEPA is reviewed under the APA.  5 U.S.C. §§ 701–706; *Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1016 (9th Cir. 2012); *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007).

"The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, __U.S.__, 140 S. Ct. 1891, 1905 (2020) (internal quotation marks and citation omitted).  Only "final agency actions" are reviewable under the APA.  5 U.S.C. § 704; *see also id.* § 701 (for purposes of the APA's judicial review provisions, "agency action" has "the meaning[] given" by § 551).  An "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13).  Under § 706 of the APA, the court is "to assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Regents*, 140 S. Ct. at 1905 (internal quotation marks and citation omitted).

The APA "requires agencies to engage in reasoned decisionmaking, and directs that agency actions be set aside if they are arbitrary or capricious." *Regents*, 140 S. Ct. at 1905 (internal citations and quotation marks omitted).  An agency's "determination in an area involving a 'high level of technical expertise'" is to be afforded deference. *McNair*, 537 F.3d at 993 (citing 5 U.S.C. § 706(2)(A)).  The district court's role "is simply to ensure that the [agency] made no 'clear error of judgment' that would render its action 'arbitrary and capricious.'" *Id.* (citing *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)); *see also Earth Island Institute v. Carlton*, 626 F.3d 462, 472 (9th Cir. 2010).  "Factual determinations must be supported by substantial evidence," and "[t]he arbitrary and capricious standard requires 'a rational connection between facts found and conclusions made.'" *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 759–60 (9th Cir. 2014) (internal citations omitted).  Applying these legal standards, the court is required

> to ensure that the agency has not, for instance, "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation

5

>for its decision that runs counter to the evidence before the agency, or [an explanation that] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*McNair*, 537 F.3d at 987 (quoting *Motor Vehicle Mfrs. Assn., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Friends of Santa Clara River v. U.S. Army Corps of Engineers*, 887 F.3d 906, 920 (9th Cir. 2018).

**C.     National Environmental Policy Act**

"[R]ecognizing the profound impact of man's activity on the interrelations of all components of the natural environment," Congress enacted NEPA in 1969.  42 U.S.C. § 4331. NEPA established the Council of Environmental Quality, which interprets the Act by "promulgat[ing] regulations to guide federal agencies in determining what actions are subject to that statutory requirement."  *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 757 (2004) (citing 40 C.F.R. § 1500.3).  NEPA requires an agency to "provide full and fair discussion of significant environmental impacts," 40 C.F.R. § 1502.1, and to prepare an Environmental Impact Statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment[.]" 42 U.S.C. § 4332(2)(C).  Among other specifications, an EIS details the environmental impact of the proposed action, any unavoidable adverse environmental effects, and alternatives to the proposed action.  *Id.*  NEPA imposes procedural rather than substantive requirements.  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989); *Ctr. for Biological Diversity v. IIano*, 928 F.3d 774, 777 (9th Cir. 2019).  So long as "the adverse environmental effects of the proposed action are adequately identified and evaluated, the agency is not constrained by NEPA from deciding that other values outweigh the environmental costs." *Robertson*, 490 U.S. at 350; *see also Conner v. Burford*, 848 F.2d 1441, 1450 (9th Cir. 1988) ("NEPA does not require that mitigation measures completely compensate for the adverse environmental effects"); *Japanese Village, LLC v. Federal Transit Admin.*, 843 F.3d 445, 455 (9th Cir. 2016).

Agencies are required to prepare supplemental environmental reviews when "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."  40 C.F.R. § 1502.9(d)(1)(ii).

6

**DISCUSSION**

As indicated in its July 23, 2021 order granting plaintiff's motion for a temporary injunction, due to the joint briefing addressing both plaintiffs' motion for a temporary injunction and the pending motion, the court was inclined to adopt that order in ruling on the pending motion for a preliminary injunction unless the parties wished to raise additional arguments. (Doc. No. 19 at 17.) Defendants requested and were granted the opportunity to present further briefing, and plaintiffs filed a reply. (Doc. No. 23.) Upon consideration of that additional briefing, the court will begin here by addressing the Ninth Circuit's ruling in *Environmental Protection Information Center v. Carlson*, 968 F.3d 985 (9th Cir. 2020) ("*EPIC*"), which directly governs this action.

**A.     The Ninth Circuit's Decision in *EPIC* and the Motion for a Preliminary Injunction**

In *EPIC*, the Ninth Circuit reversed a district court's denial of a preliminary injunction and held that CE 4 could not be relied upon to authorize an "extensive commercial logging project" that allowed for the felling and removal of millions of board feet of timber on nearly 4,700 acres of National Forest Land. *EPIC,* 968 F.3d at 988. As with the Plateau Roads Project, the timber salvage project at issue in *EPIC* provided for the felling of commercially valuable, fire-damaged trees within "one and a half tree-heights of the road." *Id.* at 991.

In the supplemental briefing filed in this case, USFS again argues that this court is not bound by the factual findings of *EPIC*, as it is distinguishable in their view, and instead "should defer to the agency's factual findings here." (Doc. No. 23 at 2–4.) However, as explained in the court's order granting the temporary restraining order, the parties in this case do not meaningfully dispute that the project at issue in *EPIC* is strikingly similar to the Plateau Roads Project. The undersigned remains persuaded that indeed the pending case presents a nearly identical factual situation as that presented in *EPIC*. (Doc. No. 19 at 9.) Moreover, in its supplemental brief, USFS merely elaborates on the arguments that this court has previously rejected in this regard. (*See, e.g.*, Doc. Nos. 23 at 3–7; 19 at 10.)

USFS's maintaining of its position compels the court to expound upon its reading of the Ninth Circuit's opinion in *EPIC*. The central holding of EPIC was that—as a matter of statutory

interpretation —CE 4 could not be used to authorize a large-scale commercial logging project. *EPIC,* 968 F.3d at 990 (examining "whether an extensive commercial logging project that includes felling large, partially burned 'merchantable' trees—including 100- and 111-foot trees located 150 and 166 feet from roads, as well as taller trees even farther away—is 'repair and maintenance' *within the meaning* of [CE 4].") (emphasis added.)  The Ninth Circuit determined that the project at issue in *EPIC* could not qualify for the categorical exclusion for road maintenance and repair base because:

> The rationale for a CE is that a project that will have only a minimal impact on the environment should be allowed to proceed without an EIS or and [Environmental Assessment (")EA(")].  The CE upon which the Forest Service relies authorizes projects for such things as grading and resurfacing of existing roads, cleaning existing culverts, and clearing roadside brush.  **A CE of such limited scope cannot reasonably be interpreted to authorize a Project such as the one before us, which allows logging of large trees up to 200 feet away from either side of hundreds of miles of Forest Service roads.**

*Id.* at 990 (emphasis added.)  While the Ninth Circuit clearly stated that "felling a dangerous dead or dying tree *right next to the road* comes within the scope of the 'repair and maintenance' CE," because "the [*EPIC*] Project allow[ed] the felling of many more trees than that," an EIS or EA was required for the project.  *Id.* at 990 (emphasis added.)

In support of its conclusion that the project did not fall under a categorical exclusion for repair and maintenance, the Ninth Circuit in *EPIC* explained that "a number of the trees" to be felled as a part of the project "will not come close to the road even if they fall directly toward it." *Id.*  After the decision in *EPIC* and "in large part due to the *EPIC* ruling," USFS issued the 2020 Hazard Tree Guidelines Addendum, which USFS asserts "did not change regional guidance on hazard tree identification but simply provided a more detailed explanation of the guidance that had already been in place."  (Doc. Nos. 16 at 24; 16-2 at 63–73.)  USFS contends that, as a result of the subsequent issuance of those guidelines, it has now established the factual support for its position that the trees it sought to fell and at issue in *EPIC* posed a danger to the roads and that the Ninth Circuit's decision in *EPIC* was factually inaccurate and incorrect.  (Doc. No. 23 at 3–4.)

/////

1       The undersigned once again concludes that USFS's argument in this regard misses the
2 point.[5] The Ninth Circuit did acknowledge that felling of dangerous trees located "right next to
3 the road" would come within the scope of the "repair and maintenance" CE and, in that context,
4 discussed the scope of a project that could be authorized pursuant to CE 4. *EPIC*, 968 F.3d at
5 990–91. Nonetheless, the court made clear that it was the type and scale of the project at issue in
6 that case which prevented it from being authorized pursuant to CE 4 and mandated further NEPA
7 environmental analysis. *Id*. In focusing its supplemental arguments on tree heights,[6] defendant
8 USFS has failed to address the foundation of the *EPIC* holding—that the text and nature of CE 4
9 does not apply to this type of extensive project at all. Thus, defendant USFS has failed to justify
10 the type of NEPA approval relied upon for the Plateau Roads Project.

11      Moreover, in crafting its temporary restraining order, the court gave all due deference to
12 the findings and needs of the agency, which is why the court allowed hazard trees within striking
13 distance of roadways to be felled and removed. The court is unable to permit any broader or
14 additional USFS forest management activity in reliance upon a categorical exclusion that is
15 limited on its face to "repair and maintenance" of roads. Thus, as noted in the court's previous
16 order, plaintiffs have demonstrated standing and have made a sufficient showing as to all four
17 prongs of the *Winter* test in order to be entitled to the requested preliminary relief. *All. for the*
18 *Wild Rockies*, 632 F.3d at 1135.

19      The court finds that requiring any additional security bond to be posted in this case is
20 unwarranted, particularly in light of the fact that plaintiffs have already posted a $100.00 bond as
21 previously ordered by the court. (Doc. No. 20.) This court has discretion "as to the amount of

---

[5] USFS also asks, in a contradictory fashion, for this court to rule that the Ninth Circuit's references in *EPIC* to "tree height is *dicta* that is not binding on this [c]ourt" but also that those references, if shown to be false, can serve as a basis to authorize the Project under CE 4 and without requiring further environmental analysis.

[6] Moreover, and as already addressed in the court's earlier order, the agency's 2020 Hazard Tree Guidelines does not provide any significant scientific evidence or support for the agency's contentions. (Doc. No. 19 at 10.) Indeed, those guidelines offer only brief, conclusory and unsubstantiated statements of the kind that the Ninth Circuit specifically rejected in *EPIC*. (*Id.*) Labelling those contentions as guidelines does not cure the deficiency.

9

security required, *if any*" and "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation marks and citation omitted); *see also E. Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838, 868–69 (N.D. Cal. 2018) (waiving a bond where defendants had not requested a bond, the balance of the hardships weighed strongly in favor of plaintiffs, and there was a significant public interest underling the action), *aff'd*, 950 F.3d 1242 (9th Cir. 2020), *and aff'd*, 950 F.3d 1242 (9th Cir. 2020).

Accordingly, the court will adopt the analysis and findings of its July 23, 2021 temporary restraining order in their entirety, and grant the preliminary injunction subject to the slight modification described below.

**C.      Defendants' Request to Modify the Temporary Restraining Order**

In their supplemental opposition to the pending motion, USFS urges the court to modify the temporary restraining order to allow for the felling and removal of "incidental trees," defined as trees "that need to be removed for [1] operator safety and [2] to get downed material out of the forest." (Doc. No. 23 at 2–3.)  In order to remove the hazard trees permitted under the court's temporary restraining order, USFS asserts that "trees that are off-limits under the TRO need to be felled so that the Forest Service can create the necessary landings and skid trails for the Project" and to proceed at a faster pace. (*Id.* at 2; Decl. of Robert Guebard ("Guebard Decl.") at ¶ 4.) Defendants argue that if the temporary restraining order remains as is, the contractor will be unable to remove all of the trees adjacent to the roadways that the agency believes "continue to pose a safety risk to the public." (Doc. No. 23 at 3; Guebard Decl. at ¶ 4.)

In their response, plaintiffs state that they do not object to a limited modification of the temporary restraining order to allow for the removal of trees dangerous to the contractor because plaintiffs do not believe that the court's prior order "was intended to restrict the contractor's ability to safely operate and abate hazards within the scope of the TRO." (Doc. No. 24 at 2.) However, plaintiffs do object to the felling of additional "live trees for landings and for what appears to be a substantial network of skid roads" because it represents a project with a much more substantial environmental impact than that envisioned under CE 4. (*Id.*)

10

Based on the parties' agreement and for good cause show, the court will modify its temporary restraining order to allow for the limited felling and removal of trees needed for safety. However, for the reasons that the Ninth Circuit explained in *EPIC*, allowing for large scale tree removal projects is inconsistent with the purposes of categorical exclusions and additional felling for skid roads or large landings cannot be authorized under CE 4. To allow large-scale, additional felling and removal of trees—determined at the sole discretion of the contractor that is ultimately compensated based on the number of merchantable trees felled—would permit the exception to swallow the rule and would be inconsistent with the Ninth Circuit's recent guidance on this precise issue in *EPIC*.

## CONCLUSION

For the reasons set forth above and in the July 23, 2021 order granting plaintiffs' motion for a temporary restraining order (Doc. No. 19):

1) Plaintiffs' motion for a preliminary injunction (Doc. No. 7) is granted;
2) The court orders that defendant United States Forest Service and/or any its contractors shall be restrained and enjoined from felling any trees in the Plateau Roads Hazard Tree Project area, except for:
   a) Those trees that will imminently fall, which is defined as those that (a) have been individually evaluated to have a "high" or "moderate" hazard rating; and (b) are within striking distance of the road, which shall be determined based on the height of the tree;[7] and
   b) Those trees which pose a safety risk to defendant United States Forest Service and/or any of its contractors while removing those trees that will imminently fall as defined above; and

/////

/////

/////

---

[7] To illustrate: a 100-foot tree evaluated as a high or moderate hazard tree may be felled only if it is within 100 feet of the nearest road.

3) No further bond will be required to be posted by plaintiffs pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: __**October 5, 2021**__   _____/s/ Dale A. Drozd_____
UNITED STATES DISTRICT JUDGE